UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL JOSEPH HARCZ, JR., | ) | |
| ELEANOR CANTER, | ) | |
| BRIAN DIAN, | ) | |
| MARK EAGLE, | ) | |
| TERRY EAGLE, | ) | |
| DAVID ROBINSON, and | ) | |
| JOSEPH SONTAG, | ) | |
|    Plaintiffs, | ) | |
| | ) | |
|    vs. | ) | Case No. |
| | ) | |
| BRODY BOUCHER, | ) | |
| JASON WILLIAMS, | ) | Hon. |
| JEFF HELD, | ) | |
| EDWIN HENRIQUEZ, | ) | |
| BRIAN GEORGE, | ) | |
| RYAN DAVIS, | ) | JURY TRIAL DEMANDED |
| STEPHEN THOMAS, | ) | |
| KEVIN COOK, | ) | |
| VINCENT MUNOZ, | ) | |
| DAN BROCKLEHURST, | ) | |
| MICHIGAN ASSOCIATION OF | ) | |
| CENTERS FOR INDEPENDENT | ) | |
| LIVING,  and | ) | |
| HANDICAPPER ADVOCACY | ) | |
| ALLIANCE, INC., | ) | |
|    Defendants. | ) | |

---

**SALVATORE PRESCOTT & PORTER, PLLC**

| | |
|---|---|
| Julie B. Porter (P81386) | Jennifer B. Salvatore (P66640) |
| 1010 Davis Street | 105 E. Main Street |
| Evanston, IL 60201 | Northville, MI 48167 |
| (312) 283-5711 | (248) 679-8711 |
| porter@spplawyers.com | salvatore@spplawyers.com |

*Attorneys for Plaintiffs*
**COMPLAINT AND JURY DEMAND**

1.      On a fine day in September 2015, the plaintiffs gathered to attend a celebration of the 25th anniversary of the Americans with Disabilities Act. The event, held on the grounds of the Michigan State Capitol in Lansing, was widely promoted as free and open to the public. Most of the plaintiffs were disabled—some legally blind, carrying white canes; one using a walker. Intending to pass out leaflets, have conversations with others at the event, and participate in a peaceful, open dialogue about issues facing people with disabilities, the plaintiffs gathered at the State Capitol. But the Michigan State Police and Capitol personnel—having agreed ahead of time with two non-profit organizations hosting the event, who wanted to suppress plaintiffs' speech and prevent them from expressing disagreement with the messages advanced by the event's organizers, to keep plaintiffs out—barred plaintiffs' entry. Literally, the police officers formed a wall with their bodies, later supplemented by metal barricades, to deny plaintiffs access and prevent them from participating in the event. To make matters worse, the police arrested a 64-year-old blind man using a white cane, without probable cause that he had committed any crime, when he sought to enter the event, as was his right.

2.      Such conduct cannot stand. American citizens have a constitutional right peaceably to assemble and to express their views, even when—*especially* when—those views spark debate and promote a free exchange of ideas. Plaintiffs seek a declaration that defendants violated their clearly established constitutional rights and a judgment awarding them damages. Plaintiffs also seek an award of their reasonable costs of litigation, including attorneys' fees and expenses, pursuant to 28 U.S.C. § 1988 and other applicable law.

## JURISDICTION AND VENUE

3.     This action arises under the Constitution and laws of the United States. The Court therefore has subject-matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     This Court has jurisdiction over plaintiff Paul Joseph Harcz, Jr.'s state-law claims pursuant to 28 U.S.C. § 1367.

5.     Plaintiffs' claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court. Plaintiffs' claims for damages are authorized under 42 U.S.C. § 1983 and state law.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), because the events giving rise to the claims occurred in this district.

## THE PARTIES

7.     Plaintiff Paul Joseph Harcz, Jr. is a 64-year-old man who resides in Mount Morris, Michigan. Harcz is legally blind and uses a white cane to navigate.

8.     Plaintiff Eleanor Canter is a 35-year-old woman who resides in Muskegon, Michigan. Canter has a disease that impacts her ability to walk unassisted. She uses a wheeled cart to support her body when she walks.

9.     Plaintiff Brian Dian is a 45-year-old man who resides in Muskegon, Michigan. Although not himself disabled, Dian's wife Eleanor Canter is disabled.

10.     Plaintiff Mark Eagle is a 31-year-old man who resides in Lansing, Michigan. Mark Eagle is legally blind and uses a white cane to navigate.

11.     Plaintiff Terry Eagle—Mark Eagle's father—is a 60-year-old man who resides in Lansing, Michigan. Terry Eagle is legally blind and uses a white cane to navigate.

12.     Plaintiff David Robinson is a 70-year-old man who resides in Jackson, Michigan. Robinson is legally blind and uses a white cane to navigate.

13.     Plaintiff Joseph Sontag is a 58-year-old man who resides in Lansing, Michigan. Sontag is legally blind and uses a white cane to navigate.

14.     Defendant Brody Boucher is a first lieutenant with the Michigan Department of State Police, commonly known as Michigan State Police. Among other responsibilities, the Michigan State Police provides law-enforcement and security services at state facilities, including the Michigan State Capitol in Lansing, Michigan. At times material to this Complaint, defendant Boucher was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Boucher is sued in his personal capacity.

15.     Defendant Jason Williams is a lieutenant with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Williams is sued in his personal capacity.

16.     Defendant Jeff Held is a Sergeant with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Held is sued in his personal capacity.

4

17.     Defendant Edwin Henriquez is a Sergeant with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Henriquez is sued in his personal capacity.

18.     Defendant Brian George is an Officer with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant George is sued in his personal capacity.

19.     Defendant Ryan Davis is an Officer with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Davis is sued in his personal capacity.

20.     Defendant Stephen Thomas is an Officer with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Thomas is sued in his personal capacity.

21.     Defendant Kevin Cook is an Officer with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Cook is sued in his personal capacity.

22.     Defendant Vincent Munoz is an Officer with the Michigan State Police. At times material to this Complaint, he was assigned to the Michigan State Police Capitol Security Section in Lansing, Michigan. Defendant Munoz is sued in his personal capacity.

23.     Defendant Dan Brocklehurst, now retired, was the facilities director for the Michigan State Capitol in Lansing, Michigan. At times material to this Complaint, he worked in Lansing and was responsible for Capitol operations. Defendant Brocklehurst is sued in his personal capacity.

24.     Defendant Michigan Association of Centers for Independent Living, doing business as Office of Disability Network/Michigan, is a Michigan non-profit corporation. At times material to this Complaint, Sara Grivetti was the Chief Executive Officer of the Disability Network/Michigan, acted on its behalf, and worked in Lansing, Michigan.

25.     Defendant Handicapper Advocacy Alliance, Inc., doing business as Capital Area Center for Independent Living or CACIL, is a Michigan non-profit corporation. At times material to this Complaint, Ellen Weaver acted on CACIL's behalf in Lansing, Michigan.

## FACTUAL ALLEGATIONS

26.     Congress passed the Americans with Disabilities Act in 1990. The ADA is a federal law that prohibits discrimination against individuals with disabilities in all areas of public life, including jobs, schools, transportation, and all public and private places that are open to the public.

27.     A central purpose of the ADA is to remove barriers—literally and figuratively—that inhibit disabled peoples' full participation in public life.

28.     Beginning in or around fall 2014, parties began planning an event to be held in or about fall 2015 at the Michigan State Capitol in Lansing, Michigan, to celebrate the ADA's 25th anniversary.

29.     There is a long tradition in Michigan of holding public events at the Michigan State Capitol. The Capitol's website, www.capitol.michigan.gov, states, "The beautiful Michigan State Capitol and Capitol Square are a place where people from across the state come to rally, celebrate, and advocate."

30.     The Michigan State Capitol permits events, rallies, and protests to be held on and around the Capitol's east steps. A short way up the steps, there is a broad, flat landing that is customarily used as a speaker's platform. Several hundred participants can easily fit on the front walk by the speaker's platform, and the adjacent lawn can accommodate thousands of people. These are considered public areas of the Capitol.

31.     Event organizers secured a permit from the Michigan State Capitol to hold the ADA 25th anniversary event on or about September 17, 2015, on or near the Capitol's public east steps and surrounding area. As the event approached, it was widely advertised on television, social media, and in newspapers as "free and open to the public."

**Plaintiff and Others Raise Questions About the ADA Event**

32.     Plaintiffs have long advocated on behalf of people with disabilities. They volunteer their time to organizations that, among other things, seek enforcement of the ADA.

33.     Plaintiff Paul Joseph Harcz, Jr. was aware of and participated in the planning of the 25th anniversary ADA event in Michigan. He served on the event's accommodations committee.

34.     The other plaintiffs were likewise aware of the planning of the 25th anniversary ADA event in Michigan.

35.     Despite Harcz's participation in the event's planning and all plaintiffs' desire to celebrate the ADA's accomplishments, plaintiffs harbored serious concerns about several aspects of the event, including private sponsorship of the event by a company that paid disabled employees less than minimum wage and the scheduling of the event at a facility—the Michigan State Capitol—that plaintiffs believed was not, itself, ADA-compliant.

36.     Plaintiffs raised these concerns with Sara Grivetti, who—on behalf of defendant Michigan Association of Centers for Independent Living, doing business as Disability Network/Michigan—was the event's chief organizer, by email and otherwise.

37.     On or about September 11, 2015, Sara Grivetti chaired a meeting of the Statewide Independent Living Council. Multiple attendees, including some of the plaintiffs, expressed concerns to Grivetti about the upcoming ADA event, including the event's acceptance of private funds from a company that pays less than the minimum wage to disabled workers. After the meeting, Grivetti reported to colleagues that there might be protests at the event. She said that she planned to meet with the Lieutenant Governor's office "to ensure that he is well informed about the challenges and possible protests."

38.     Before in or about September 2015, Sara Grivetti expected attendance and support at the ADA event from the Road to Freedom Bus/ADA Legacy Tour—a group touring the United States to support local disability-rights organizations. By no later than on or about September 14, 2015, Grivetti learned that the Road to Freedom Bus representative also objected to the Michigan ADA event's acceptance of funds from a company that paid sub-minimum wage to disabled workers.

## Michigan State Police Becomes Aware of Planned Protests

39.     By no later than on or about September 15, 2015, defendants First Lt. Brody Boucher, Sgt. Jeff Held, and Sgt. Edwin Henriquez, all with the Michigan State Police, were aware that some people who intended to attend the ADA event disagreed with the event's organizers about certain issues relating to the event and might protest. Defendants had no information whatsoever that anyone intended to use or promote violence at the event.

40.     On or about September 15, 2015, defendant Sgt. Jeff Held spoke with Ellen Weaver, who was representing defendant CACIL. Weaver told Sgt. Held that the people who were going to protest had recently been part of CACIL but had disagreements about sponsorship of the event. She stated concern that the potential protestors would disrupt her event. She said CACIL originally had scheduled the Road to Freedom Bus to come and participate in the event, but now the Road to Freedom Bus had backed out. Weaver told Sgt. Held that she had reserved parking spots on Capitol Avenue for the bus, but if it showed up in support of the protestors, she would not allow it to park there.

41.     The same day, defendant Sgt. Jeff Held spoke with Sara Grivetti. Grivetti told Sgt. Held that the protestors objected to one of defendant CACIL's sponsors. She said she was concerned that the protestors would disrupt the event. Sgt. Held assured Grivetti that no one would be permitted to protest at the event.

42.     Following these calls with Ellen Weaver and Sara Grivetti, defendant Sgt. Jeff Held met with defendant Lt. Jason Williams to discuss the operational plan for the event. Sgt. Held and Lt. Williams decided to deploy Michigan State Police officers to cover the ADA event.

**Discussions with Capitol Representative**

43.     Sara Grivetti also communicated with defendant Dan Brocklehurst, Capitol Facilities Director, about the event.

44.     By no later than on or about September 16, 2015, Sara Grivetti informed defendant Dan Brocklehurst that she expected there to be protests at the event.

**The Day of the Event**

45.     On or about September 17, 2015, around 8:30 am, defendant Sgt. Jeff Held met with Sara Grivetti and Ellen Weaver. Grivetti and Weaver told Sgt. Held that they did not want protestors to disrupt the event.

46.     Even though there was no basis whatsoever to conclude that plaintiffs or their colleagues were violent or any threat to public safety at all, defendant Sgt. Jeff Held agreed with Sara Grivetti and Ellen Weaver that Sgt. Held would cause the Michigan State Police to exclude anyone that they believed were protestors from the ADA event. Sgt. Held told Grivetti and Weaver that the Michigan State Police would not permit protestors

10

to pass beyond the Austin Blair statue, which was located approximately 150 feet from the Michigan State Capitol's east steps.

47.     Plaintiffs and others arrived at the Michigan State Capitol the morning of September 17, 2015, intending to enter the ADA event. Plaintiffs and others in the group lived all over the State of Michigan. Many traveled a long way to Lansing for this event, some at considerable expense and with difficulty, because of the event's importance to them. All were present to attend the ADA event and peacefully to share their views on issues important to them concerning enforcement of laws pertaining to people with disabilities.

48.     Plaintiffs Mark Eagle, Terry Eagle, David Robinson, and Joseph Sontag, and others, first gathered at the corner of Ottawa and Capitol Avenue, approximately a half block from the main sidewalk leading to the Capitol. They were carrying white canes for the blind. Mark Eagle was carrying a banner for the National Federation of the Blind. Others had signs with messages, such as "Capitol Not ADA Compliant" and "End Segregated Work." Some had leaflets that they intended to distribute to event attendees, addressing enforcement of the ADA.

49.     While plaintiffs Mark Eagle, Terry Eagle, David Robinson, and Joseph Sontag were still at the corner, chatting with each other and others who were arriving, defendant Sgt. Jeff Held approached them. Sgt. Held asked whether plaintiffs were going to the celebration, and they said yes. Sgt. Held said that plaintiffs would not be permitted to go past the Austin Blair statue. Plaintiffs asked why not, and Sgt. Held said that the ADA celebration was a private event, and its organizers did not want a disturbance.

Terry Eagle told Sgt. Held that he and the others were just going to attend the event and hold their signs and that they would not make any disturbance. Sgt. Held repeated that plaintiffs would not be permitted to go past the statue.

50.     Meanwhile, plaintiffs Paul Joseph Harcz, Jr., Eleanor Canter, and Brian Dian, and others, were also gathering near the Capitol and preparing to enter the event. Harcz was carrying a white cane for the blind, and Canter was using a walker. Harcz was also carrying leaflets that he intended to distribute to event attendees, addressing enforcement of the ADA.

51.     Plaintiffs gathered on the sidewalk heading toward the Capitol. Including others who had joined them, the group numbered approximately 15 or 20 people, most with obvious physical disabilities. They stood on the sidewalk, some introducing themselves to one another.

52.     Some who had been standing on the corner of Ottawa and Capitol Avenue told plaintiffs Paul Joseph Harcz, Jr., Eleanor Canter, and Brian Dian that the police were not going to let them enter the event.

53.     Defendants Sgt. Jeff Held and Sgt. Edwin Henriquez approached the group. Plaintiff Eleanor Canter asked words to the effect of, "You're going to let us in, right?" The officers shook their heads, indicating no. As Canter tried to move forward, Sgt. Held placed his boot in front of the wheel of her walker, barring her way.

54.     Defendants Sgt. Jeff Held and Sgt. Edwin Henriquez stood in front of the group to block its progress. Sgt. Held and Sgt. Henriquez repeated that plaintiffs and

12

their associates would not be allowed into the event. Sgt. Held ordered officers to block their path.

55. Officers Kevin Cook, Ryan Davis, Brian George, Vincent Munoz, and Stephen Thomas, along with the sergeants, used their bodies to form a physical barrier, prohibiting plaintiffs and others in the group from entering the ADA event. Other Michigan State Police officers likewise were posted in the area to prevent plaintiffs and others in the group from entering.

56. Plaintiffs complained that the police could not lawfully block their entrance. Among other things, plaintiffs and others being denied entry told the officers:

- They were people with disabilities who were invited to the event and wished to attend;

- They had no intention of doing anything violent and were there only to use their voices, hand out leaflets, and celebrate the ADA;

- They did not intend to make a disturbance;

- They had not done anything wrong;

- This was a public event, which they had the right to attend;

- The officers were violating their civil rights; and

- The officers had no right to keep them out.

57. Defendant Sgt. Jeff Held conferred with the Capitol Facilities Director, defendant Dan Brocklehurst. Not only did the Michigan State Police defendants and Brocklehurst fail to let plaintiffs and the others inside the event, but they went even further, erecting and causing to be erected metal barricades to keep them out.

58.     The metal barricades were at least approximately 130 feet from the stage where the ADA event was taking place.

59.     In addition, the metal barricades were placed in such a manner that they obstructed the paved walkway. The only way around the barriers was over the grass, with the result that people in wheelchairs and walkers with wheels could not readily access the event.

60.     Plaintiff Brian Dian asked the officers to speak to whatever officer was in charge. A lieutenant came to the area near the Austin Blair statue and spoke with Dian. The lieutenant also spoke, separately, with plaintiffs Mark and Terry Eagle. The lieutenant refused to allow Dian, Mark Eagle, Terry Eagle, or the others to enter the ADA event. He said that the organizers did not want plaintiffs to attend and, falsely, that the event was private.

**Officers Arrest Plaintiff Harcz**

61.     Plaintiff Paul Joseph Harcz, Jr., knowing that the Michigan State Police's efforts to bar him from the event were illegal and violated his constitutional rights, and being informed that others were entering the event, attempted to proceed through the barriers to enter the event.

62.     Plaintiff Paul Joseph Harcz, Jr. is approximately five feet, eight inches tall and weighs approximately 150 pounds. He is legally blind and uses a white cane to navigate.

63.     Plaintiff Paul Joseph Harcz, Jr. used his cane to try to find a way through the barricade and reached out with his hands to determine whether there was any

obstruction. Harcz repeatedly asked the officers to move out of his way. The officers pushed him back. Harcz tried to find a way around the barricade, using his cane, but defendant Ofc. Brian George moved into Harcz's path to stop him. As Harcz tried to keep moving forward, Ofc. George blocked Harcz's way.

64.     At no point did plaintiff Paul Joseph Harcz, Jr. swing his cane at officers or use his cane as a weapon in any way. Nor did he use his arms, hands, or any part of his body as a weapon. He was simply feeling for where the barricade was.

65.     At no point did plaintiff Paul Joseph Harcz, Jr. assault, batter, wound, resist, obstruct, oppose, or endanger the officers. He was just trying to find his way into the event, which he knew was free and open to the public.

66.     Reacting to plaintiff Paul Joseph Harcz, Jr.'s efforts to enter the event, and saying, "You're not going to disrupt the event!," defendant Sgt. Edwin Henriquez directed the other officers to arrest Harcz.

67.     Sgt. Henriquez grabbed Harcz by one arm and pulled him across and through the metal barricades. Defendant Ofc. Ryan Davis grabbed Harcz's other arm. With defendant Ofc. Stephen Thomas's assistance, Sgt. Henriquez put Harcz in handcuffs and removed him from the area.

68.     Plaintiff Paul Joseph Harcz, Jr. did not resist arrest. He responded passively to the officers, making his body limp. The officers dragged Harcz down the walkway, through the ADA event, and into the State Capitol.

69.     The Michigan State Police defendants held plaintiff Paul Joseph Harcz, Jr., and caused him to be held, at the State Capitol Detachment Office for the remainder of the event.

**Plaintiff Harcz Is Charged with a Crime**

70.     The Michigan State Police defendants caused plaintiff Paul Joseph Harcz, Jr. to be charged with a felony violation of MCL 750.81d(1), alleging that Harcz "did assault, batter, wound, resist, obstruct, oppose, or endanger Officer Ryan Davis and/or Officer Brian George and/or Sgt Edwin Hernandez, a police officer of Michigan State Police – Capitol Security that the defendant knew or had reason to know was performing his or her duties."

71.     Plaintiff Paul Joseph Harcz, Jr. had done none of those things. But he was taken to Lansing City Jail, where he was booked and required to post a bond.

72.     Defendants Sgt. Jeff Held, Sgt. Edwin Henriquez, Ofc. Brian George, and Ofc. Ryan Davis wrote and caused to be written false police reports. For example:

- Ofc. George wrote:

> Harcz finds the end of the barricade, nearest the Austin Blair [statue], and uses his body and arms to push me [Ofc. George] out of the way….As I hold on to the barricade with my left hand, Harcz becomes more aggressive and attempts to push his way [past] me again. At this time, Sergeant Henriquez approaches Harcz and tells him repeatedly that he is not going to be disruptive to the event. Harcz then pushes Sergeant Henriquez out of the way in an attempt to get [past] the remaining Capitol Security Officers. At this time, Sergeant Henriquez grabs a hold of Harcz left arm to arrest him for assaulting two police officers and Harz begins to resist. Officer Davis then used his hands to block Harcz from swinging and hitting him with the cane.

- Ofc. Davis wrote:

> As [Harcz] was attempting to walk around the metal barricade, Officer George stepped in front of HARCZ to stop him. HARCZ then started walking through the flower bed attempting to get past Officer George. When HARCZ realized he wasn't going to make it, he pushed Officer George, trying to get past him. As HARCZ was pushing Officer George, Sergeant Henriquez directed us to arrest HARCZ.

As multiple videos of the event plainly show, Harcz did not push Sgt. Henriquez, Ofc. George, or any of the officers; nor did he swing at them with his cane. He was arrested because he attempted to cross through the barrier erected and caused to be erected by defendants.

73.     For almost a year, the Ingham County Prosecutor's Office pursued the charge. Plaintiff Paul Joseph Harcz, Jr. had to retain a private attorney, arrange transportation from Mt. Morris on multiple occasions for court hearings, and otherwise endure the fear and distress associated with a criminal prosecution.

74.     At a preliminary examination on or about October 16, 2015, defendant Sgt. Edwin Henriquez acknowledged that the Michigan State Police had information about a group planning to protest at the ADA event and planned to keep that group from entering the event. Sgt. Henriquez testified: "State Police had information that a counter-protest was coming to that event to protest the ADA. This group was identified as that counter-protestors. I approached them and I told them that while they are more than welcome to be on state property, they can't actually disrupt the event. So we asked them if they were going to protest that [they] can't pass this statu[e] right here."

75.     Defendant Sgt. Edwin Henriquez further described plaintiff Paul Joseph Harcz, Jr.'s efforts to enter the event: "He came with his walking stick, and he was

17

feeling around the officers, hitting them on their legs, hitting between their legs, attempting to go through. At one point I went up to him and told him to stop that because he's hitting my officers and he needs to calm down. At that point he did step back."

76.     After about a half hour, according to defendant Sgt. Edwin Henriquez, plaintiff Paul Joseph Harcz, Jr. stated that he was going to enter the event: "At one point the defendant [Harcz] walked up to the barrier and with his hand felt it and was heard saying he's going to go through. He doesn't care the barrier's there, he's gonna go through."

77.     Defendant Sgt. Edwin Henriquez said that plaintiff Paul Joseph Harcz, Jr. tried to go through the barricade, but "[w]e prevented him from getting through it." He said that Harcz "felt his way with his hands along the railing, and when he got to the end of it, we only had about two barricades up, so when he got to the end of it, he attempted to go around it…. At that point Officer Brian George tried to physically stop him, stood in front of him and told him not to, you know, you can't go through. And he pushed—tried to put his body—tried to push his way through. When I saw that, I approached to help Officer George to prevent him from going through the barricade. And at the same time I was also asking the defendant [Harcz] to stop it, because he's not gonna get through and we will not allow him to disrupt the event. He insisted on pushing through."

78.     Defendant Sgt. Edwin Henriquez stated, further, that defendant Lt. Jason Williams specifically instructed Sgt. Henriquez to prevent plaintiff Paul Joseph Harcz, Jr. and his associates from entering the event.

79.     Following the testimony, despite a complete lack of evidence to support the charge that plaintiff Paul Joseph Harcz, Jr. violated MCL 750.81d(1), the judge erroneously and based on false and misleading evidence found probable cause that Harcz obstructed the officers because he failed to comply with their commands to stay out of the ADA event.

80.     Failing to comply with unlawful police commands is not a crime. There was no probable cause to arrest or charge plaintiff Paul Joseph Harcz, Jr. with violating MCL 750.81d(1).

81.     On or about August 22, 2016—on the day that the case was set for trial—the Ingham County Prosecutor's Office dropped all charges against plaintiff Paul Joseph Harcz, Jr.

## COUNT I
### (Deprivation of Plaintiffs' First Amendment Rights)
### (Against All Defendants – For Declaratory Relief and Damages)
### (42 U.S.C. §§ 1983 and 1988)

82.     Paragraphs one through 81 are incorporated here.

83.     Defendants First Lt. Brody Boucher, Lt. Jason Williams, Sgt. Jeff Held, Sgt. Edwin Henriquez, Ofc. Brian George, Ofc. Ryan Davis, Ofc. Stephen Thomas, Ofc. Kevin Cook, Ofc. Vincent Munoz, and Dan Brocklehurst were state actors.

84.     Defendants Disability Network/Michigan and CACIL jointly engaged with state officials in the prohibited actions and conspired with the state officials to violate the plaintiffs' constitutional rights.

85.     All defendants were therefore acting under color of state law.

86.     Defendants First Lt. Brody Boucher and Lt. Jason Williams supervised the other Michigan State Police defendants, including Sgt. Jeff Held and Sgt. Edwin Henriquez. First Lt. Boucher and Lt. Williams encouraged the specific incidents of misconduct at issue in this case—by coming to the protest scene, refusing plaintiffs entry, and allowing other officers to continue to exclude plaintiffs from the event; and by instructing Sgt. Held and Sgt. Henriquez to exclude protestors from the ADA event.

87.     Defendants Sgt. Jeff Held and Sgt. Edwin Henriquez supervised the Michigan State Police officers who are defendants. Sgt. Held and Sgt. Henriquez encouraged the specific incidents of misconduct at issue in this case by instructing the officers to prevent protestors from entering the ADA event. Also, they directly participated in the misconduct as described above.

88.     Plaintiffs were engaged in activities protected by the First Amendment to the U.S. Constitution, including the right to free speech and peaceably to assemble. They had a right to attend the public ADA event, to protest, and to hand out leaflets communicating their opinions.

89.     By targeting plaintiffs and their associates before they even arrived at the ADA event, and creating and implementing a plan to bar them from the event, and by arresting and detaining Harcz without probable cause, defendants deprived plaintiffs of their right to freedom of speech and right peaceably to assemble in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

20

90.     Defendants caused plaintiffs to suffer injuries that would chill a person of ordinary fitness from continuing to engage in that activity.

91.     Plaintiffs' constitutionally protected activity motivated defendants' adverse actions. Thus, defendants acted with a retaliatory intent and motive.

92.     As a direct and proximate result of defendants' violation of the First Amendment, plaintiffs suffered harm, including the loss of their fundamental constitutional rights, entitling them to declaratory relief and damages.

## COUNT II
### (Equal Protection – Fourteenth Amendment)
### (Against All Defendants – For Declaratory Relief and Damages)
### (42 U.S.C. §§ 1983 and 1988)

93.     Paragraphs one through 92 are incorporated here.

94.     Because of the speech restrictions described above, implemented under color of state law, defendants have unconstitutionally deprived plaintiffs of the equal protection of the law guaranteed under the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983, in that defendants prevented plaintiffs from expressing a message based on its content and viewpoint, thereby denying the use of a forum to those whose views defendants found unacceptable.

95.     As a direct and proximate result of defendants' violation of the equal protection clause of the Fourteenth Amendment, plaintiffs suffered harm, including the loss of their fundamental constitutional rights, entitling them to declaratory relief and damages.

## COUNT III
### (False Arrest and False Imprisonment)
### (Against Defendants Williams, Held, Henriquez, Davis, George, and Thomas)
### (42 U.S.C. §§ 1983 and 1988)

96.    Paragraphs one through 95 are incorporated here.

97.    Plaintiff Paul Joseph Harcz, Jr. had the right under the Fourth Amendment to the U.S. Constitution to be free from improper and illegal seizures of his person, including false arrest and false imprisonment.

98.    Defendants Lt. Jason Williams, Sgt. Jeff Held, Sgt. Edwin Henriquez, Ofc. Ryan Davis, Ofc. Brian George, and Ofc. Stephen Thomas, acting in their individual capacities under color of state law, participated in an illegal and unjustified arrest when they arrested and detained, and caused to be arrested and detained, plaintiff Paul Joseph Harcz, Jr. for allegedly violating MCL 750.81d(1).

99.    Defendants lacked probable cause to arrest and detain plaintiff Paul Joseph Harcz, Jr. for allegedly violating MCL 750.81d(1), because: (a) Harcz did not assault, batter, wound, resist, obstruct, oppose, or endanger a police officer, and (b) the officers were acting unlawfully when they sought to prevent Harcz from entering the ADA event.

100.    Defendants could not have reasonably believed that plaintiff Paul Joseph Harcz, Jr.'s arrest and detention were lawful, in light of clearly established law and the information that defendants possessed at the time, as described above.

101.    As a direct and proximate result of this false arrest and false imprisonment, plaintiff Paul Joseph Harcz, Jr. suffered harm, entitling him to damages.

## COUNT IV
### (Malicious Prosecution)
### (Against Defendants Williams, Held, Henriquez, Davis, George, and Thomas)
### (42 U.S.C. §§ 1983 and 1988)

102. Paragraphs one through 101 are incorporated here.

103. A criminal prosecution was initiated and continued against plaintiff Paul Joseph Harcz, Jr. for allegedly violating MCL 750.81d(1).

104. Defendants Lt. Jason Williams, Sgt. Jeff Held, Sgt. Edwin Henriquez, Ofc. Ryan Davis, Ofc. Brian George, and Ofc. Stephen Thomas, acting in their individual capacities under color of state law, influenced and participated in the decision to prosecute by arresting and detaining plaintiff Paul Joseph Harcz, Jr. and by making a formal complaint to the Ingham County Prosecutor's Office.

105. Defendants wrote and caused to be written false police reports, which stated that plaintiff Paul Joseph Harcz, Jr. pushed defendants Sgt. Edwin Henriquez and Ofc. Brian George. Harcz did not push them. He was arrested because he tried to cross the illegal barriers erected to prevent him and others from entering the ADA event. These false police reports influenced the decision to prosecute Harcz.

106. Defendant Sgt. Edwin Henriquez likewise provided false and misleading testimony at the probable-cause hearing, thereby influencing and participating in the decision to prosecute and maintain charges against Harcz.

107. These officers stated deliberate falsehoods, knowingly or in reckless disregard of the truth. In addition, they provided false, material information (such as that plaintiff Paul Joseph Harcz, Jr. pushed various officers) and omitted material information

(such as that Harcz was merely disobeying their illegal orders not an enter an event that was free and open to the public), influencing the prosecution's determination that there was probable cause to initiate and to continue to pursue criminal proceedings against Harcz.

108.    There was no probable cause for the prosecution.

109.    Because of the legal proceeding, plaintiff Paul Joseph Harcz, Jr. suffered deprivations of liberty apart from the initial seizure. After being released on bond, Harcz was subjected for almost a year to pre-trial release conditions and required to appear in court for pre-trial proceedings.

110.    The criminal proceeding was resolved in plaintiff Paul Joseph Harcz, Jr.'s favor when the prosecutor dropped all charges.

111.    As a direct and proximate result of this malicious prosecution, plaintiff Paul Joseph Harcz, Jr. suffered harm, entitling him to damages.

### COUNT V
### (False Arrest and False Imprisonment Under Michigan Law)
### (Against Defendants Williams, Held, Henriquez, Davis, George, and Thomas)

112.    Paragraphs one through 111 are incorporated here.

113.    Defendants Lt. Jason Williams, Sgt. Jeff Held, Sgt. Edwin Henriquez, Ofc. Ryan Davis, Ofc. Brian George, and Ofc. Stephen Thomas participated in an illegal and unjustified arrest when they arrested and detained, and caused to be arrested and detained, plaintiff Paul Joseph Harcz, Jr. for allegedly violating MCL 750.81d(1).

114.    Defendants lacked probable cause to arrest and detain plaintiff Paul Joseph Harcz, Jr. for allegedly violating MCL 750.81d(1), because: (a) Harcz did not

assault, batter, wound, resist, obstruct, oppose, or endanger a police officer, and (b) the officers were acting unlawfully when they sought to prevent Harcz from entering the ADA event.

115.    Defendants did not and could not reasonably believe that they were acting within the scope of their authority, because clearly established law protected plaintiff Paul Joseph Harcz, Jr.'s freedom of speech and right peaceably to assemble, including his right to attend the public ADA event, even if to protest and pass out leaflets that contradicted the ADA event's messages.

116.    By nevertheless arresting plaintiff Paul Joseph Harcz, Jr., and causing him to be arrested, defendants acted wantonly, maliciously, and with a reckless indifference to the common dictates of humanity. Arresting a blind man using his white cane and his hands to find and move past human and metal barriers that should not have been erected in the first place is plainly and obviously wrong. Defendants' conduct amounted, at a minimum, to gross negligence that proximately caused injury to plaintiff Harcz.

117.    As a direct and proximate result of this false arrest and false imprisonment, plaintiff Paul Joseph Harcz, Jr. suffered harm, entitling him to damages.


**COUNT VI**
**(Malicious Prosecution Under Michigan Law)**
**(Against Defendants Williams, Held, Henriquez, Davis, George, and Thomas)**

118.    Paragraphs one through 117 are incorporated here.

119.    A criminal prosecution was initiated and continued against plaintiff Paul Joseph Harcz, Jr. for allegedly violating MCL 750.81d(1).

120.    Defendants Lt. Jason Williams, Sgt. Jeff Held, Sgt. Edwin Henriquez, Ofc. Ryan Davis, Ofc. Brian George, and Ofc. Stephen Thomas, acting in their individual capacities under color of state law, influenced and participated in the decision to prosecute by arresting and detaining plaintiff Paul Joseph Harcz, Jr. and by making a formal complaint to the Ingham County Prosecutor's Office.

121.    Defendants wrote and caused to be written false police reports, and knowingly and deliberately swore to false facts in complaints, when they stated that plaintiff Paul Joseph Harcz, Jr. pushed defendants Sgt. Edwin Henriquez and Ofc. Brian George. Harcz did not push them. He was arrested because he tried to cross the illegal barriers erected to prevent him and others from entering the ADA event. These false police reports influenced the decision to prosecute Harcz.

122.    Defendant Sgt. Edwin Henriquez likewise provided false and misleading testimony at the probable-cause hearing, thereby influencing and participating in the decision to prosecute and maintain charges against Harcz.

123.    These officers' statements were material to the prosecution's determination that there was probable cause to initiate and to continue to pursue criminal proceedings against Harcz.

124.    There was no probable cause for the prosecution.

125.    Because of the legal proceeding, plaintiff Paul Joseph Harcz, Jr. suffered deprivations of liberty apart from the initial seizure. After being released on bond, Harcz was subjected for almost a year to pre-trial release conditions and required to appear in court for pre-trial proceedings.

126.   The criminal proceeding was resolved in plaintiff Paul Joseph Harcz, Jr.'s favor when the prosecutor dropped all charges.

127.   As a direct and proximate result of this malicious prosecution, plaintiff Paul Joseph Harcz, Jr. suffered harm, entitling him to damages.

WHEREFORE, plaintiffs request judgment in their favor and against defendants, as follows:

a.  To declare that defendants violated plaintiffs' fundamental constitutional rights as set forth in this Complaint;

b.  Compensatory damages;

c.  Punitive damages;

d.  Statutory interest;

e.  To award plaintiffs their reasonable attorney's fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and other applicable law; and

f.  To grant such other and further relief as this Court should find just and proper.

Dated:  February 3, 2017   By: s/ Julie B. Porter and Jennifer B. Salvatore
                                SALVATORE PRESCOTT & PORTER

Julie B. Porter                  Jennifer B. Salvatore
1010 Davis Street                105 E. Main Street
Evanston, IL 60201               Northville, MI 48167
(312) 283-5711                   (248) 679-8711
porter@spplawyers.com            salvatore@spplawyers.com

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| PAUL JOSEPH HARCZ, JR., | ) | |
| ELEANOR CANTER, | ) | |
| BRIAN DIAN, | ) | |
| MARK EAGLE, | ) | |
| TERRY EAGLE, | ) | |
| DAVID ROBINSON, and | ) | |
| JOSEPH SONTAG, | ) | |
|    Plaintiffs, | ) | |
| | ) | |
|    vs. | ) | Case No. |
| | ) | |
| BRODY BOUCHER, | ) | |
| JASON WILLIAMS, | ) | Hon. |
| JEFF HELD, | ) | |
| EDWIN HENRIQUEZ, | ) | |
| BRIAN GEORGE, | ) | |
| RYAN DAVIS, | ) | JURY TRIAL DEMANDED |
| STEPHEN THOMAS, | ) | |
| KEVIN COOK, | ) | |
| VINCENT MUNOZ, | ) | |
| DAN BROCKLEHURST, | ) | |
| MICHIGAN ASSOCIATION OF | ) | |
| CENTERS FOR INDEPENDENT | ) | |
| LIVING,  and | ) | |
| HANDICAPPER ADVOCACY | ) | |
| ALLIANCE, INC., | ) | |
|    Defendants. | ) | |

---

**SALVATORE PRESCOTT & PORTER, PLLC**

Julie B. Porter (P81386)     Jennifer B. Salvatore (P66640)
1010 Davis Street           105 E. Main Street
Evanston, IL 60201          Northville, MI 48167
(312) 283-5711              (248) 679-8711
porter@spplawyers.com       salvatore@spplawyers.com

*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

28

NOW COMES Plaintiffs, Paul Joseph Harcz, Jr., Eleanor Canter, Brian Dian, Mark Eagle, Terry Eagle, David Robinson, and Joseph Sontag, by and through their attorneys, SALVATORE PRESCOTT & PORTER, PLLC, and hereby demand a jury trial in the above-captioned matter.

Dated:  February 3, 2017   By: s/ Julie B. Porter and Jennifer B. Salvatore
                                SALVATORE PRESCOTT & PORTER

| Julie B. Porter | Jennifer B. Salvatore |
|---|---|
| 1010 Davis Street | 105 E. Main Street |
| Evanston, IL 60201 | Northville, MI 48167 |
| (312) 283-5711 | (248) 679-8711 |
| porter@spplawyers.com | salvatore@spplawyers.com |